MADELINE V. SCHURMAN *v.* GEORGE C. SCHURMAN

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and SHEA, JS.

Argued June 3—decision released September 7, 1982

*Coreen M. Sedor,* with whom, on the brief, were *John A. Carrozzella* and *William F. Dezinno,* for the appellant-appellee (plaintiff).

*Gordon A. Evans,* for the appellee-appellant (defendant).

PETERS, J. This is a case concerning the effect of the Uniform Child Custody Jurisdiction Act on civil contempt proceedings. The plaintiff, Madeline V. Schurman, brought an action in this state seeking a dissolution of her marriage with the defendant, George C. Schurman, and custody of their only child, Jody. At the time this action was brought, divorce and custody proceedings had already been initiated in the state of New York; both parties were represented by counsel in New York and participated in hearings and motions before the New York court. The trial court refused to permit the plaintiff to relitigate the New York decree that had awarded custody of the parties' child to the defendant. The court did not, however, grant the defendant's motion that the plaintiff be held in contempt and be assessed expenses and attorney's fees. The defendant has appealed.

Before we address the merits of the defendant's appeal, we must first consider a procedural question. After the trial court's judgment on December 24, 1980, the first party to take an appeal was the plaintiff, who filed her appeal on January 13, 1981. Thereafter, the defendant filed a cross appeal on January 22, 1981, within the ten day period provided by Practice Book § 3003. The defendant's appeal was timely only because it was a cross appeal since an original appeal would have had to be taken no more than twenty days after the issuance of notice of rendition of the trial court's judgment. See Practice Book § 3007. The plaintiff subsequently, on May 11, 1982, withdrew her appeal.

We must decide what effect that withdrawal had on the defendant's cross appeal.

It is our judgment that the defendant's cross appeal, having been timely when it was filed, did not become untimely because of the plaintiff's decision not to pursue her appeal. Practice Book § 3003 requires cross appeals to be filed "within ten days from the filing of the appeal." The same section goes on to specify that "all subsequent proceedings shall be the same as though the cross appeal were an original appeal." The effect of this provision is to give a cross appeal filed within the period specified by § 3003 the same independent status as an original appeal would have had if filed within the time period specified by § 3007. See Maltbie, Conn. App. Proc. § 122, pp. 146–47. Just as withdrawal of an action does not impair a defendant's right to pursue a previously filed counterclaim; see Practice Book § 169; so withdrawal of an appeal does not preclude continued prosecution of a previously filed cross appeal. See *Feder* v. *Field,* 117 Ind. 386, 389–90, 20 N.E. 129 (1889); *White Stores, Inc.* v. *Crain,* 515 S.W.2d 677, 678 (Tex. Civ. App. 1974); *San Pedro, Los Angeles & Salt Lake R. Co.* v. *Board of Education,* 35 Utah 13, 17, 99 P. 263 (1909).

On the merits, the defendant's cross appeal presents two issues. Did the trial court err in refusing to grant the defendant's motion to hold the plaintiff in contempt? Did the trial court err in refusing to require the plaintiff to pay the defendant's necessary travel and other expenses including his attorney's fees?[1] Both of these issues turn on

---

[1] Although other issues were originally presented, at oral argument counsel for the defendant restricted the appeal to these two claims of error.

the proper interpretation of the provisions of the Uniform Child Custody Jurisdiction Act, General Statutes §§ 46b-90 et seq. ("the Act").

The trial court determined that the defendant's motion for contempt should not be granted, in part because the defendant had not filed the New York custody decree in the manner required by our statutes. Although the defendant had attached a certified copy of the decree to his motion for contempt as an exhibit, he had failed to comply with the statutory prerequisites for registry of an out-of-state custody decree here.[2] In order for a decree to be registered under General Statutes § 46b-106,[3] a certified copy of the decree must be "filed in the office of the clerk of the superior court." General Statutes §§ 46b-105[4] and 46b-106 (1); cf. *Krueger*

---

[2] The defendant's brief indicates that the defendant had intended to file a certified copy of the New York decree with the clerk of the court, and believed this had been done. However, the defendant chose not to contest the trial court's statement that no such decree was in the New Haven County Custody Registry. The present case does not require us to determine whether the statutory requirements would have been met had the defendant attempted to make a proper filing which had inadvertently failed to find its way into the registry.

[3] "[General Statutes] Sec. 46b-106. REGISTRY OF OUT-OF-STATE CUSTODY DECREES AND PROCEEDINGS. The clerk of the superior court for each judicial district shall maintain a registry in which he shall enter the following:

(1) Certified copies of custody decrees of other states received for filing;

(2) Communications as to the pendency of custody proceedings in other states;

(3) Communications concerning a finding of inconvenient forum by a court of another state; and

(4) Other communications or documents concerning custody proceedings in another state which may affect the jurisdiction of a court of this state or the disposition to be made by it in a custody proceeding."

[4] "[General Statutes] Sec. 46b-105. FILING AND ENFORCEMENT OF CUSTODY DECREE OF ANOTHER STATE. (a) A certified copy of a custody decree of another state may be filed in the office of the clerk

v. *Krueger,* 179 Conn. 488, 492–93, 427 A.2d 400 (1980). Although the trial court was willing to acknowledge the informally filed New York decree for some purposes;[5] see *Agnello* v. *Becker,* 184 Conn. 421, 427, 440 A.2d 172 (1981); it was not willing to overlook the procedural omission when ruling on the defendant's contempt motion.

In assigning error to the trial court's denial of the motion to hold the plaintiff in contempt, the defendant principally argues that he had substantially complied with the statutory requirements of General Statutes §§ 46b-105 and 46b-106. He suggests, in the alternative, either that his attachment of the decree to his contempt motion constituted a filing, because the motion itself was properly filed, or that formal filing was irrelevant once the court had actual knowledge of the contents of the out-of-state decree by virtue of its attachment to the contempt motion.

The defendant's first argument is unpersuasive. The statutes clearly contemplate the creation, by special filing, of a registry of all out-of-state custody decrees. General Statutes § 46b-106. The registry, whose purpose is "to gather all information concerning out-of-state custody cases . . .";  Commissioners' Note, Uniform Child Custody

of the superior court. The clerk shall treat the decree in the same manner as a custody decree of the superior court. A custody decree so filed has the same effect and shall be enforced in like manner as a custody decree rendered by the superior court.

(b) A person violating a custody decree of another state which makes it necessary to enforce the decree in this state may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody or his witnesses."

[5] The propriety of that part of the trial court's decision was an issue in the plaintiff's appeal which has been withdrawn.

Jurisdiction Act § 16, 9 U.L.A. 160; requires systematic implementation by filing pursuant to § 46b-105. Although the legislature might have authorized other means of filing, it did not do so. We are bound to interpret legislative intent by referring to what the legislative text contains, not by what it might have contained. *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979); *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978). We conclude therefore, as did the trial court, that the defendant did not properly file his out-of-state decree.

The defendant's second contention must be examined in light of the context of this case. The defendant concedes that a motion for contempt invokes the exercise of discretion by the trial court. *Stovall* v. *Crosby,* 171 Colo. 70, 75, 464 P.2d 868 (1970); *Busch* v. *Berg,* 52 App. Div. 2d 1082, 1082–83, 384 N.Y.S.2d 301 (1976); *Tente* v. *Tente,* 112 R.I. 636, 639, 314 A.2d 149 (1974); *Brooks* v. *Brooks,* 131 Vt. 86, 92, 300 A.2d 531 (1973); see *Potter* v. *Board of Selectmen,* 174 Conn. 195, 197, 384 A.2d 369 (1978); *Tobey* v. *Tobey,* 165 Conn. 742, 745, 345 A.2d 21 (1974). He argues that the trial court erroneously concluded that it had no discretion to hold the plaintiff in contempt because of the defendant's failure to comply with the statutory filing requirements. He maintains that the court should have taken the decree into account, despite its improper filing, once the court was fully apprised of its contents. Since the function of a registry of decrees is informational, that function is, he claims, as well served by actual knowledge as by formal filing.

The difficulty with this contention of the defendant is that it is predicated on the hypothesis that the

trial court assigned a conclusory effect to the improper filing. We read the memorandum of decision differently. The trial court first described its discretionary ground rules, and then noted the difficulty of finding in contempt a party who had only two days' notice of the decree with which she was expected to comply. In addition, the court then considered the effect of the absence of the New York decree from the New Haven County registry. We interpret the trial court's judgment as an exercise of discretion in which the improper filing was one factor, but not a dispositive factor.

The issue which then remains to be resolved is a narrow one. Was the court in error in refusing to find the plaintiff in contempt in partial reliance on the defendant's failure to file the New York decree properly? We conclude that the court was justified in its denial of the motion for contempt.

The weight to be assigned to the defendant's formal noncompliance with the statute rests in the discretion of the trial court. General Statutes § 46b-103[6] requires the court to afford appropriate recognition of out-of-state custody decrees without regard to compliance with the filing provisions of §§ 46b-105 and 46b-106. *Agnello* v. *Becker,* supra, 427. In order to implement the policy of the Uniform Child Custody Jurisdiction Act, a court may choose to overlook formal defects when the circumstances

---

[6] "[General Statutes] Sec. 46b-103. RECOGNITION OF OUT-OF-STATE CUSTODY DECREES. The courts of this state shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of this chapter."

warrant such action. Other courts in other jurisdictions interpreting the same Act have taken a similarly flexible attitude toward out-of-state decrees that were part of the record although not formally filed. See, e.g., *Baird* v. *Baird,* 374 So. 2d 60, 63 (Fla. App. 1979); *Roehl* v. *O'Keefe,* 243 Ga. 696, 697, 256 S.E.2d 375 (1979); *Moseley* v. *Goldstone,* 89 Ill. App. 3d 360, 366, 411 N.E.2d 1145 (1980).

In determining whether to hold the plaintiff in contempt, the trial court was, however, entitled to take into account not only its knowledge of the New York decree but also the serious nature of the sanctions that attend a finding of contempt. "The contempt remedy is particularly harsh; 2 Nelson, Divorce & Annulment (2d Ed.) § 16.04, p. 395; and may be founded solely upon some clear and express direction of the court. Id., § 16.03, p. 392." *Blaydes* v. *Blaydes,* 187 Conn. 464, 467, 446 A.2d 825 (1982). The trial court could reasonably have concluded, in the circumstances of this case, that the plaintiff was not sufficiently forewarned of the danger of being in contempt. The extremely short time interval between the rendition of the New York decree and the defendant's contempt motion, and the nonfiling of the New York decree, were sufficient bases, conjointly, for the exercise of the trial court's discretion.

The defendant's second claim of error is that he was entitled to have the plaintiff pay his necessary travel and other expenses. This claim arises under General Statutes § 46b-105 (a),[7] a subsection of the statute that provides for filing of a certified copy of a custody decree in the office of the clerk of the Superior Court. For all of the reasons given earlier

[7] For text, see footnote 4, supra.

in this opinion, we find no abuse of discretion in the trial court's refusal to make the award sought by the defendant. The statutory provision is permissive in its language, since it states that "[a] person violating a custody decree of another state . . . *may* be required to pay necessary . . . expenses . . . ." (Emphasis added.) The defendant's claim in this regard is clearly ancillary to his substantive claim for relief, which we have found unpersuasive.

There is no error.

In this opinion the other judges concurred.